UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

|  |  |
|---|---|
| RAFIK CHAIB and ZACKARY CHAIB, a minor, by and through his mother, SOUAD CHAIB, <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHERN AIRWAYS EXPRESS, LLC and UNITED AIRLINES, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. The plaintiff, Rafik Chaib, is a resident of Massachusetts who resides in East Boston, Massachusetts. He is the father of the minor plaintiff, Zackary Chaib.

2. The plaintiff, Souad Chaib, is a resident of Massachusetts who resides in East Boston, Massachusetts. She is the mother and natural guardian of minor plaintiff Zackary Chaib and brings this claim on his behalf.

3. The defendant, Southern Airways Express LLC (SAE), is a Delaware limited liability company with a principal place of business in Addison, Texas and/or Palm Beach, Florida.

4. SAE is authorized by the Federal Aviation Administration ("FAA") to operate as a commercial air carrier and conduct common carriage operations in accordance with FAA rules and regulations.

5. SAE is a schedule service commuter airline serving approximately 36 cities across the United States. The mid-Atlantic states, New England, and the Gulf region of the United States are its largest markets for passengers.

6. SAE has Interline Agreements with Alaska Airlines, American Airlines, Hawaiian Airlines, and defendant United Airlines, Inc. (United). SAE's Interlining Agreement with United Airlines is a voluntary commercial agreement to handle passengers traveling on itineraries that require multiple flights on United and SAE to multiple destinations,

1

including Massachusetts residents flying to those destinations on SAE. Such agreements allow passengers to change from one flight on United to a connecting flight operated by SAE with a single itinerary booked and ticketed through United in Massachusetts.

7. Through these agreements, SAE knows that passengers travelling from Massachusetts on American Airlines and United Airlines flights will fly on SAE aircraft to reach their final destinations, thereby serving the Massachusetts air traveling market and deriving substantial revenue from Massachusetts residents.

8. Members of the air traveling public, including Massachusetts residents, may purchase SAE flight services via its website and through major airline booking and ticketing sites that have an Interline Agreement with SAE.

9. SAE gave express authorization to United and other airlines with whom it had agreements to sell multi-flight tickets in Massachusetts to Massachusetts residents that included flights operated by SAE, and SAE derived substantial revenue from this activity.

10. As part of its customer service, SAE operates a virtual call center to handle calls and customer interactions with people throughout the United States, including processing reservations, making ticket changes, and handling customer inquiries.

11. SAE offers private charter flights through its subsidiary, Southern Private Jets, providing on-demand access to various aircraft for customized trips, including trips from and to Massachusetts.

12. United is a Delaware corporation with its principal place of business in Chicago, Illinois.

13. United is authorized by the FAA to operate as an air carrier and conduct common carriage operations in accordance with FAA rules and regulations.

14. United is one of the largest domestic and international commercial airlines in the United States with approximately 4,000 daily scheduled domestic flights, including hundreds of daily fleets in and out of Boston Logan International Airport (Logan).

15. United maintains offices in Massachusetts and employs hundreds of Massachusetts residents to provide flight services and aircraft maintenance.

16. Through its interline agreement with SAE, United sells multi-leg itineraries that include SAE flights with both initial departure and final return flights in Massachusetts. Both United and SAE permit transport of Massachusetts residents that have purchased airline tickets from United with multi-flight itineraries to their destinations in multiple states across the country, including Virginia where the crash occurred and Pennsylvania, which was the intended destination of the subject flight.

17. The plaintiffs purchased round trip itineraries from United with both the initial departure and final return flights at Logan in Massachusetts and flight legs operated by SAE.

## SUBJECT MATTER AND PERSONAL JURISDICTION

18. This Court has personal jurisdiction over United under the Massachusetts Long-Arm Statute because United transacts business and provides services in Massachusetts from which it gains substantial revenue, and the plaintiffs' claims arose of out of United's activities in Massachusetts.

19. This Court has personal jurisdiction over United under the Due Process Clause of the United States Constitution because United purposefully availed itself of the privilege of transacting business and providing services in Massachusetts by issuing United Airlines tickets to Massachusetts residents and operating hundreds of flights daily in and out of Massachusetts airports, including the sale of tickets to the plaintiffs for the subject flights originating and ending in Massachusetts via an interline agreement with SAE. The plaintiff's' cause of action against United are sufficiently related to and arise out of United's transacting of business and providing air transportation services in Massachusetts to the plaintiffs and others. Were it not for United role as the seller of the tickets, its transport of the plaintiffs to Virginia as the first leg of the flight itinerary, and its contractual relationship with SAE, the plaintiffs would not have been on the subject ill-fated SAE flight.

20. This Court has personal jurisdiction over SAE under the Massachusetts Long-Arm Statute because it transacts business in Massachusetts and provides services to Massachusetts residents from which it gains substantial revenue and the plaintiffs' cause of action arose out of SAE's activities in Massachusetts.

21. This Court has personal jurisdiction over SAE under the Due Process Clause of the United States Constitution because SAE purposefully availed itself of the privilege of transacting business and providing services to Massachusetts residents. SAE gave express consent, authorization, and agency to United under the interline agreement or other contractual agreements to sell tickets to Massachusetts residents who would fly on aircraft owned and operated by SAE as part of a multi-flight itinerary. Through this conduct directed at Massachusetts residents, SAE purposefully availed itself of the privilege of conducting business in Massachusetts and serving the travel needs of Massachusetts residents. The plaintiffs' cause of action against SAE is sufficiently related to and arose out of SAE's transacting of business and providing air transportation services to Massachusetts residents.

22. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) based on diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## GENERAL ALLEGATIONS

23. On or about January 14, 2024, the plaintiffs, through United's website, purchased from United airline tickets for passengers Rafik Chaib and Zackary Chaib from Boston to Lancaster Pennsylvania. The multi-flight round-trip itinerary had the following flight legs:

    - 1/19/2024, 9:25 a.m.—United Flight UA 216 from Boston to Washington Dulles International Airport (IAD) in Virginia
    - 1/19/2-24, 12:45 p.m.—SAE Flight 9X246 from Washington Dulles to Lancaster PA
    - 1/22/2024, 6:05 a.m.—SAE Flight from Lancaster PA to Washington DC
    - 1/22/2024, 8:50 a.m.—United Flight from Washington Dulles to Boston

24. The plaintiffs were traveling to Lancaster Pennsylvania to attend a soccer tournament in which Zackary, a highly rated and skilled high school soccer player, would be participating as a player. At the time of the crash, Zackary was a member of an elite soccer school called the New England Revolution Academy. Zackary participated in the academy's Pro Player Pathway program that develops and trains high school students for Major League Soccer teams, such as the New England Revolution.

25. On January 19, 2024, after safely arriving at IAD on the first leg of the itinerary, the plaintiffs boarded an SAE aircraft, a single-engine turboprop Cessna 208B (Registration No. N1983X)(the subject aircraft), for the flight to Lancaster, Pennsylvania. (the subject flight).

26. The subject flight was operated by SAE as a Federal Aviation Regulation Part 135 scheduled commercial commuter passenger flight.

27. On January 19, 2024, the subject flight departed IAD at about 12:47 p.m. with a flight crew consisting of the pilot in command and a copilot. Shortly after takeoff, at an elevation of about 600 feet AGL, the crew contacted Dulles Air Traffic Control to declare an emergency after experiencing a shattering sound and vibrations coming from the engine. After the pilots initiated procedures to return to IAD, the engine of the subject aircraft became unresponsive and the aircraft rapidly lost altitude, necessitating an emergency landing on highway 606 in Virginia near the perimeter of IAD.

28. The subject aircraft landed hard on the highway and bounced up and down several times as it careened down the highway before crashing into a steel guardrail and eventually coming to a stop. The plaintiffs were subjected to violent movements that physically impacted their bodies. Shortly thereafter, emergency first responders arrived at the scene.

29. The plaintiffs experienced terror and fear of imminent death during the rapid descent, emergency landing, crash into the guardrail, and uncontrolled careening along the highway before the aircraft came to a stop and they were able to exit the aircraft.

30. The weather at the time of the crash consisted of a broken ceiling at 900 feet with a visibility of one mile in light snow and mist.

31. The impact of the crash caused the seat-belted plaintiffs to be thrown in multiple directions. Rafik Chaib hit his head. Due to the physical impact of the crash on Rafik Chaib's body, he sustained personal injuries consisting of post-concussion syndrome, extreme whiplash of his cervical spine resulting in radiculopathy, neck pain, and aggravation of a preexisting lumbar radiculopathy.

32. As a result of the subject crash, Rafik Chaib has suffered severe emotional distress manifested by stress; anxiety; major depression; severe chronic post-traumatic stress disorder; cognitive impairment; anger; panic attacks; exhaustion; lack of concentration; low self-esteem; sleeplessness; nightmares about the crash; constant headaches; being frightened by common noises; panicking when he hears the sound of an airplane; loss of intimacy with his wife; the inability to engage in and enjoy travelling, spending time with his children, listening to music, playing sports, and other activities he previously enjoyed; and the inability to perform household duties, parenting, chores, and cooking for his wife and three children. His emotional condition and distress have adversely affected his performance at his job and his ability to be a good father and husband.

33. As a result of the crash, Zackary Chaib has suffered severe emotional distress manifested by post-traumatic stress disorder, night terrors, mood dysregulation, fatigue, headaches, stomach problems, sleeplessness, fear, anxiety, difficulty concentrating at school and during daily life, flashbacks of the crash, nightmares about falling from high heights, difficulty concentrating and performing while playing soccer, absences from school and soccer practices, and fear of flying. These conditions have adversely affected Zackary's performance at school and as a soccer player. His high school grades declined and his abilities on the soccer field deteriorated, which resulted in his dismissal from the New Revolution Academy. He has a reduced interest in and enthusiasm for soccer and he switched teams to avoid air travel. He has difficulty concentrating that has negatively affected his friendship with peers, his relationship with his family, his soccer performance, and academic performance.

## COUNT I

**Plaintiffs, RAFIK CHAIB'S and ZACKARY CHAIB'S,
Claims Against Southern Airways Express, LLC for
Personal Physical Injuries and Emotional Distress
Predicated on Negligence in the Providing
of an Unairworthy Aircraft**

34. Plaintiffs repeat and reallege the allegations of paragraphs 1-33 of their complaint as if

5

each were stated fully herein.

35. At all relevant times, SAE was in the business of providing scheduled commercial flights from Washington Dulles Airport to Lancaster, Pennsylvania, and other scheduled flights to numerous locations in the United States, including the subject flight.

36. On January 19, 2024, Rafik and Zackary Chaib were fare-paying passengers on the subject flight.

37. At all relevant times, SAE, as a common air passenger carrier, owed the plaintiff a non-delegable duty to exercise the highest degree of care or, at the very least, reasonable care and prudence in the providing of an airworthy aircraft capable of safe flight from Washington Dulles Airport to Lancaster, Pennsylvania.

38. As a commercial air carrier, the duty owed by SAE to the plaintiffs and other passengers on the subject flight to provide an airworthy aircraft could not be transferred or delegated to another person or entity.

39. The subject aircraft supplied and operated by SAE to transport the plaintiffs and other passengers from Washington Dulles Airport to Lancaster, Pennsylvania, was not in an airworthy condition and suffered mechanical failure during the subject flight that rendered the aircraft unfit for safe flight due to its defective, dangerous, negligently maintained or inspected condition and general state of disrepair including, but not limited to, the state of disrepair and defective condition of the aircraft's failed engine.

40. As a result of SAE's negligence, the subject aircraft experienced a loss of control, rendering the aircraft incapable of sustaining controlled fight and resulting in the crash that caused the plaintiffs' injuries.

41. As passengers on the subject aircraft, the plaintiffs were within the zone of danger created by SAE's negligence.

42. SAE's negligence, as described above, placed the plaintiffs in danger of immediate and serious bodily harm.

43. Due to the crash and violent movement of his body during the crash, Zackary Chaib suffered impacts to his body and Rafik Chaib suffered physical personal injuries.

44. As a direct and proximate cause of SAE's negligence and the physical injuries and bodily impact caused by the violent crash, the plaintiffs suffered severe emotional distress and mental anguish. Their emotional distress and related conditions continue to this day and are demonstrated and manifested by objective symptomology. The plaintiffs' ability to enjoy life and engage in the usual and ordinary activities of their life have been substantially and forever diminished.

45. A reasonable person would have suffered severe emotional distress under the

circumstances that the plaintiffs endured on the subject flight and its aftermath.

46. As a direct result of his emotional distress and physical injuries and conditions described above, Rafik Chaib also suffered diminished earning capacity, financial losses, and other consequential damages resulting from his inability to work in his usual capacity.

WHEREFORE, the plaintiffs demand judgment against SAE in an amount that is just and appropriate to compensate them for their personal injuries, mental anguish, emotional distress and monetary loss, plus interest and costs.

## COUNT II

### Plaintiffs' Claims Against SAE Predicted on Negligence of the Flight Crew

47. Plaintiffs repeat and reallege the allegations of paragraphs 1-46 of their complaint as if each were stated fully herein.

48. At all relevant times, the pilots of the subject aircraft were employees or agent of SAE and were acting within the scope of their employment when piloting the subject aircraft on January 19, 2024.

49. At all relevant times, SAE, by and through the actions of their employee pilots, owed the plaintiffs a non-delegable duty to exercise reasonable care and prudence in the operating of the subject aircraft.

50. The pilots of the subject aircraft failed to exercise that degree of reasonable care that a reasonably prudent pilot would have exercised under the same circumstances.

51. As a direct and proximate cause of the pilots' negligence, the subject aircraft crashed resulting in the plaintiffs' injuries as described above and economic loss to Rafik Chaib.

WHEREFORE, the plaintiffs demand judgment against SAE in an amount that is just and appropriate to compensate them for their personal injuries, mental anguish, emotional distress and monetary loss, plus interest and costs.

## COUNT III

### Plaintiffs, RAFIK CHAIB'S and ZACKARY CHAIB'S, Claims Against Southern Airways Express, LLC for Personal Physical Injuries and Emotional Distress Predicated on the *Res Ipsa Loquitor* Doctrine

52. Plaintiffs repeat and reallege the allegations of paragraphs 1-51 of their complaint as if each were stated fully herein.

53. The crash of the subject aircraft is an event that would not ordinarily occur in the absence of SAE's negligence in providing an unairworthy aircraft to conduct the subject flight and/or the pilots' operation of the subject aircraft.

54. Because SAE controlled the subject aircraft, there is no reasonable probability that a cause other than the negligence of SAE caused the subject aircraft to crash.

55. There was a greater likelihood or probability that the crash and the plaintiffs' injuries were due to causes for which SAE was responsible than from any other cause.

56. SAE's control the subject aircraft and its operation on the day of the crash warrants an inference that SAE was more likely responsible for the incident than someone else.

57. As a direct and proximate cause of the pilots' negligence, the subject aircraft crashed resulting in the plaintiffs' injuries as described above and economic loss to Rafik Chaib.

WHEREFORE, the plaintiffs demand judgment against SAE in an amount that is just and appropriate to compensate them for their personal injuries, mental anguish, emotional distress and monetary loss, plus interest and costs.

## COUNT IV

**Plaintiffs, RAFIK CHAIB'S and ZACKARY CHAIB'S, Claims
Against United Airlines, Inc. for Personal Physical Injuries
and Emotional Distress Predicated on Negligence
in the Providing of an Unairworthy Aircraft and
Negligence of the Pilots**

58. Plaintiffs repeat and reallege the allegations of paragraphs 1-57 of their complaint as if each were stated fully herein.

59. United is a common carrier providing domestic and international flights to the traveling public.

60. SAE is a common carrier providing domestic commuter flights to the traveling public.

61. United had a nondelegable duty to the plaintiffs and air traveling public to provide for safe carriage.

62. United issued and sold multi-flight tickets on a single itinerary to the plaintiffs for air travel on January 19, 2024 from Boston to Washington Dulles Airport and then to Lancaster, Pennsylvania, and for flights on January 22, 2024, from Lancaster, Pennsylvania to Washington Dulles Airport and then to Boston.

63. United contracted with and retained SAE to operate the flights between Washington Dulles Airport and Lancaster, Pennsylvania that were part of the roundtrip itinerary United sold to the plaintiffs that included the subject flight.

64. United's and SAE's activity of providing air travel services to the plaintiffs and others could not be lawfully conducted without a certificate, license, or franchise granted by the FAA, as a public authority, to conduct activities that involve a risk of harm to others, including commercial air travel.

65. As a result, United is subject to liability for bodily harm and personal injuries caused by the negligence of a contractor employed to do work in carrying on the activity of providing commercial air services to the plaintiffs and others. Therefore, United is liable to the plaintiffs for providing an unairworthy aircraft and the negligence of the pilots, as described above, as if United operated the flight itself.

66. As a direct and proximate result of United's and SAE's negligent breach of their duty to provide safe carriage, the subject aircraft experienced a loss of control, rendering the aircraft incapable of sustaining controlled fight and resulting in the crash that caused the plaintiffs' injuries.

67. As a direct and proximate cause of United and SAE's negligence, the plaintiffs suffered physical injuries, bodily impact, severe emotional distress and mental anguish, as described above, during and after the events.

68. As a direct result of his emotional distress and physical injuries and conditions described above, Rafik Chaib also suffered diminished earning capacity, financial losses, and other consequential damages resulting from his inability to work in his usual capacity.

WHEREFORE, the plaintiffs demand judgment against United Airlines, Inc., in an amount that is just and appropriate to compensate them for their personal injuries, mental anguish, emotional distress and monetary loss, plus interest and costs.

## COUNT V

**Plaintiffs, RAFIK CHAIB'S and ZACKARY CHAIB'S, Claims
Against United Airlines, Inc. for Personal Physical Injuries,
Monetary Loss, and Emotional Distress Predicated on
Negligence in the Providing of an Unairworthy Aircraft and
Negligence of the Pilots Predicated on Apparent Agency**

69. Plaintiffs repeat and reallege the allegations of paragraphs 1-68 of their complaint as if each were stated fully herein.

70. SAE negligently supplied an unairworthy aircraft for the plaintiff's use and its pilots negligently piloted the subject aircraft as described above.

71. United is liable for the injuries and loss caused by SAE's negligent conduct because SAE was the apparent agent of United.

72. United, as the principal, made manifestations and representations to the plaintiffs and the other passengers leading them to reasonably believe that SAE had the authority to act as United's agent for the benefit of United including, but not limited to, identifying SAE in the itinerary as the operator of the flights to and from Lancaster to the complete the multi-destination itinerary for the ticket sold by United to the plaintiffs; sharing in the profits from the subject flight jointly with SA; and allowing SAE to make changes to the plaintiffs' itinerary.

73. The plaintiffs and the other passengers on the subject flight reasonably relied upon United's conduct, representations, and manifestations vesting SAE with apparent authority to act on United's behalf.

74. United's conduct, representations, and manifestations reasonably led the plaintiffs and the other passengers on the subject flight to believe that United vested SAE with apparent authority to act on United's behalf.

75. The plaintiffs reasonably acted upon their belief to their detriment.

76. The plaintiffs justifiably relied upon the appearance of an agency relationship between United and SAE.

77. Because SAE was United's apparent agent, United is vicariously liable for SAE's negligence.

78. As a direct and proximate result of the negligent conduct of SAE, as the apparent agent of United, the plaintiffs suffered injuries and monetary loss as described above.

WHEREFORE, the plaintiffs demand judgment against United for damages sufficient to fully and fairly compensate them for their injuries, together with interest and costs, and such other relief as the Court deems appropriate.

### COUNT VI

**Plaintiffs, RAFIK CHAIB'S and ZACKARY CHAIB'S, Claims
Against United and SAE for Personal Physical Injuries,
Emotional Distress, and Rafik Chaib's Pecuniary Loss
Predicated on Breach of Contract**

79. Plaintiffs repeat and reallege the allegations of paragraphs 1-78 of their complaint as if each were stated fully herein.

80. The plaintiffs purchased a ticket from United for a flight from Washington Dulles Airport in Virginia to Lancaster, Pennsylvania, operated by SAE giving rise to a contractual obligation of both defendants to provide an airworthy aircraft for each leg of the itinerary

and to otherwise operate each flight safely.

81. The defendants breached their contractual obligation to provide an airworthy aircraft to the plaintiffs and to operate the flight safely as described above.

82. The defendants breached their contractual obligation to provide competent pilots to safely operate and land the subject aircraft as described above.

83. As a direct and proximate result of the defendants' breach of their contractual obligations to the plaintiffs, the subject aircraft, which departed IAD in an unairworthy condition, suffered a mechanical failure resulting in a terrifying sudden loss of altitude and violent emergency landing and crash causing monetary loss, personal injuries, mental anguish and emotional distress described above.

WHEREFORE, the plaintiffs demand judgment against United Airlines, Inc., and Southern Airways Express LLC, in an amount that is just and appropriate to compensate them for their emotional distress and monetary loss, plus interest and costs.

The plaintiffs demand a trial by jury on all claims.

By their attorneys,

*/s/ Anthony Tarricone*
Anthony Tarricone, BBO #492480
atarricone@kreindler.com
*/s/ Joseph P. Musacchio*
Joseph P. Musacchio, BBO #365270
jmusacchio@kreindler.com
KREINDLER & KREINDLER LLP
855 Boylston Street
Boston, MA  02116
Phone: 617-424-9100
Fax:    617-424-9120

*/s/ Jason L. Vincent*
Jason L. Vincent
jvincent@kreindler.com
*Pending admission pro hac vice*
KREINDLER & KREINDLER LLP
485 Lexington Avenue, 28th Floor
New York, NY  10071
(212) 687-8181

*Selke v. Germanwings GMBH* (EDVa) 37 Avi. 18,447 and 37 Avi. 18,461 (PJ case)

Both SAE and SAC are wholly owned subsidiaries of defendant Surfair Mobility, Inc. (Surfair), a Delaware corporation with a principal place of business in Hawthorn, California. Surfair describes itself as "an electric aviation, software, and air travel company expanding the category of regional air travel and reinventing flying through the power of electrification." Surfair operates a website offering booking and ticketing of flights operated by SAE and Mokulele Airlines, a Hawaiian commuter airline. All defendants will hereinafter be referred to as SAE.